J-A23012-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 718 MDA 2023 |

Appeal from the Order Entered April 14, 2023
In the Court of Common Pleas of Lycoming County Orphans' Court at
No(s):  2022-6805

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                     **FILED: OCTOBER 25, 2023**

J.S. (Father) appeals from the order, entered in the Court of Common Pleas of Lycoming County Orphans' Court Division, involuntarily terminating his parental rights to his minor daughter, J.S. (Child) (born 8/2016).  After careful review, we affirm.

Mother and Father divorced on February 10, 2020.  Mother and B.V. (Stepfather) were married on September 5, 2020; they have a two-year-old daughter together. A.V.  Child lives with Mother, Stepfather, and A.V.

In December 2018, Mother filed a protection from abuse (PFA) petition against Father listing Mother as the protected party.  On January 2, 2019, the court entered a final PFA order, awarding Mother primary custody and partial custody of Child to Father.  The order permitted Father to have visits supervised by maternal grandfather.

---

[*] Former Justice specially assigned to the Superior Court.

On January 24, 2022, the court extended the final PFA, making it effective until March 2, 2025. The extended PFA order revoked Father's partial physical custody rights and specifically advised that, if Father wished to reestablish his custody rights, he should do so by filing a custody complaint. *See* N.T. Termination Hearing, at 10 (Mother testifying Father told "multiple times by the judge, even the PFA that we had first time[,] if he wanted to see [Child] he needed to file for custody"); *see also* Final PFA Order, 1/24/22. Father never filed for custody of Child.

Father last had direct contact with Child in early 2019.[1] Mother testified that Child does not recall who Father is and that there is no parent-child bond between Father and Child. *Id.* at 12. Father has never provided financially for Child. Except for "calling Child on occasion and Father's family attempting to send Child gifts," the only efforts Father has made to contact Child have been post-petition, sending her a science kit, blanket, laptop, and a card. *Id.* at 14-15, 30. *See also id.* at 39 (Father asking Mother if she "received the gifts that I had . . . sent to [Child], including letters and everything **from the moment that I receive**[d] **the T**[ermination of] **P**[arental] **R**[ights petition**?]") (emphasis added). The court found "Mother placed no obstacles in Father's path that would prevent him from exercising his parental rights, privileges, and obligations with regard to Child." Trial Court Opinion, 4/14/23, at 8 (unpaginated).

---

[1] Mother's address was listed on the bottom of the extended PFA order. Maternal grandparents' address was also provided on the December 2018 temporary PFA order.

J-A23012-23

On May 4, 2022, Mother and B.V. (Stepfather) petitioned to terminate Father's parental rights to J.S. *See* 23 Pa.C.S.A. § 2512(a).[2] On November 29, 2022, the court held a termination hearing[3] at which Mother, Stepfather, Father, *pro se*,[4] and Josselyn Angelo,[5] a friend of paternal grandmother's,

_____

[2] Although not at issue on appeal, Stepfather averred that he intends to adopt Child. *See In re T.S.M.*, 71 A.3d 251 (Pa. 2013) (petition to terminate parental right filed by biological parent "is only cognizable when it is accompanied by a prospective stepparent's intention to adopt the child") (citation omitted).

[3] Terra R. Koernig, Esquire, represented Child's legal and best interests at the hearing. *See In Re: T.S., E.S.*, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests.").

[4] Jessica Feese, Esquire, of the Lycoming County Public Defender's Office, was appointed to represent Father. On August 23, 2022, Attorney Feese filed a petition for leave to withdraw from representing Father on the basis that Father had retained private counsel. Following a hearing, at which Father failed to appear or participate remotely by phone, the court granted the petition on the condition that Father's privately-retained counsel file an entry of appearance or Father file a *pro se* entry of appearance. In the event neither entry of appearance was entered, Attorney Feese would remain counsel of record to represent him. When Attorney Feese left the Public Defender's Office, Jeana Longo, Esquire, entered her appearance for Father on November 8, 2022. Subsequently, on February 7, 2023, Attorney Longo sought leave to withdraw after Father asked her to do so "because he felt she was not an honest attorney." Trial Court Opinion, 4/14/23, at 2 (unpaginated). The court granted the request on March 20,2023, and entered an order indicating its intent to proceed with the hearing as scheduled.

[5] Father presented the testimony of Josselyn Angel who testified that she sent text messages, on behalf of paternal grandmother, to maternal grandparents in an effort to set up a date to meet with Child and to get Mother's address to send things to Child. N.T. Termination Hearing, 3/24/23, at 103-04.

- 3 -

testified.[6]  On April 14, 2023, the court entered an order involuntarily terminating Father's parental rights pursuant to subsections 2511(a)(1) and (b) of the Adoption Act.[7]  Father filed a timely notice of appeal and presents the following issue for our consideration:  "Whether the [trial] court erred in finding that [Mother] presented clear and convincing evidence that []Father demonstrated a settled purpose to relinquish parental claims and failure to perform parental duties."  Father's Brief, at 4.

When we review termination of parental rights cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." **In re T.S.M.**, **supra** at 267 (citation omitted). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." **In re Adoption of K.C.**, 199 A.3d 470, 473 (Pa. Super. 2018).  We may reverse a trial court's decision in a termination case "for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." **In re Adoption of S.P.**,  47 A.3d 817, 826 (Pa. 2012).

Under section 2511, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence

---

[6] While Father was ordered to appear in person at the termination hearing, the court permitted him to participate *pro se* remotely over the phone.

[7] 23 Pa.C.S.A. §§ 2101-2938.

that the parent's conduct satisfies the statutory grounds for termination delineated in [subs]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subs]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007).

Moreover, under subsection 2511(a)(1), the rights of a parent in regard to a child may be terminated after a petition filed when "[t]he parent[,] by conduct continuing for a period of at least six months immediately preceding the filing of the petition[,] either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S.A. § 2511(a)(1). Additionally, under subsection 2511(b) provides as follows:

> **(b) *Other considerations.*** — The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. **With respect to any petition filed pursuant to subsection (a)(1),** (6) or (8), **the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.**

23 Pa.C.S.A. § 2511(b) (emphasis added).

Here, the trial court concluded that Mother proved, by clear and convincing evidence, grounds to terminate Father's parental rights under subsections 2511(a)(1) and (b). Specifically, the court found

> Father has clearly not met []his affirmative duty [of parenting Child]. Father has not attended any medical appointments or

school conference for [] Child. Although Father testified he has had frequent contact with Child's school, the Child's attorney confirmed with the school that all of Father's contacts were made during the 2022-2023 school year, after the filing of the [termination p]etition. Father did send gifts for the Child on occasion, mostly in 2019/2020 or after the filing of the [p]etition. Father has never paid child support or provided for the Child's basic necessities. Father's last contact with the child was sometime in 2019. Since that time, Father has never made meal for [C]hild, never helped her with her homework, and never comforted her when she was sick or scared. In short, Father has failed to perform any parental duties relative to the physical and emotional needs of the Child.

Trial Court Opinion, 4/14/23, at 6-7 (unpaginated). Most notably, Father never filed for custody after being told by the trial court in a PFA order to do so in order to reestablish his custodial rights. The court, in short, did not find "Father's explanation or argument[s] persuasive." Trial Court Opinion, 4/14/23, at 7. Finally, the court did not believe that Mother crated obstacles to prevent Father from exercising his custodial rights.

After a comprehensive review of the record and the notes of testimony from the termination hearing, we conclude that the trial court's factual findings and legal conclusions are supported by the record. Mother proved, by clear and convincing evidence, that for a period in excess of six months, Father "evidenced both a settled purpose of relinquishing parental claim to Child and . . . failed to perform his parental duties." 23 Pa.C.S.A. § 2511(a)(1). Thus, we affirm. *In re Adoption of K.C.*, *supra*.

Order affirmed.[8]

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/25/2023

_____

[8] Although Father does not argue that the court erred in terminating his parental rights under subsection 2511(b), because termination is a bifurcated process, we will address the issue. We likewise find that the court's decision on this basis was supported in the record. Specifically, Mother testified that Child does not recall Father and that there is no bond between Father and Child. **See** N.T. Termination Hearing, 3/29/23, at 12. Child calls Stepfather "daddy," **id.** at 59, Stepfather "consider[s him]self a father figure in [Child's] life, **id.** at 58-59, and the two have established a parent-child relationship. **Id.** at 60-61. Stepfather intends to adopt Child and considers her "one of his own [children]." **Id.** at 59. Finally, Child resides with Mother, Stepfather, and Child's half-sister, A.V., in a home where her developmental, physical and emotional needs are being met. **In the Int. of K.T.**, 296 A.3d 1085, 1106 (Pa. 2023) (under subsection 2511(b), "child's emotional needs and welfare include intangibles such as love, comfort, security, and stability[,] . . . i.e., specific needs and aspects of the child's welfare," must be considered). Finally, Mother and Stepfather both testified that terminating Father's parental rights to Child would be in Child's best interest. **See** N.T. Termination Hearing, 3/29/23, at 15, 59.